UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CROSSPOINTE, LLC, a Florida corporation,**
    Plaintiff,

-vs-                Case No.  6:03-cv-558-Orl-19KRS

**INTEGRATED COMPUTING, INC., a Florida corporation, SMARTWEB TECHNOLOGY, INC., a Florida corporation, DAVID SCOTT, a citizen of Florida, and BILL W. MERRYMAN, a citizen of Florida,**
    **Defendants.**

_____

# ORDER

  This case comes before the Court on the following:

1. CrossPointe, LLC's and CrossPointe, Inc.'s ["CrossPointe"] Motion for Costs and Attorney's Fees (Doc. No. 519, filed Feb. 2, 2005); Defendants' Opposition to CrossPointe's Motion for Costs (Doc. No. 533, filed Feb. 9, 2005); Defendants' Opposition to CrossPointe's Motion for Attorney's Fees (Doc. No. 539, filed Feb. 14, 2005).

2. Defendants' Motion for Attorney's fees and Costs and Memorandum (Doc. No. 531, filed Feb. 7, 2005); CrossPointe, LLC's Opposition to Defendants' Motion for Attorney's Fees and Costs (Doc. No. 540, filed Feb. 18, 2005).

**Background**

  This contentious case arises from the copyright and business disputes between competitors Plaintiff CrossPointe, LLC,[1] and Defendants Integrated Computing, Inc., SmartWeb Technology, Inc., David Scott, Bill Merryman, and Michelle Farabaksh regarding several computer software programs designed to assist primary and secondary school systems in their administrative functions.

---

[1] CrossPointe, LLC was substituted for CrossPointe, Inc., as Plaintiff in this action on December 11, 2003.  (Doc. No. 132, filed Dec. 11, 2003).

From 1979 until October, 2002, Educational Data Resources, Inc. (EDR) and its president, John Manoni, marketed, licensed and maintained a software system called Total Educations Resource System (TERMS) which was specially designed to meet the administrative needs of school districts. (Doc. No. 431, filed Sept. 17, 2004, Joint Pretrial Statement, pp. 24, 27). EDR was the author of Application Environment 3.1, which performs the functions of security, help, control records and routing for the TERMS system and which was implemented in 1996. (*Id.* at 28).

David Scott was employed by EDR as a computer programmer from 1987 until June, 1992. (*Id.* at 27). In June, 1992, Scott formed Integrated Computing, Inc., and was its sole officer, director, and shareholder. (*Id.* at 26). EDR and Integrated had an agreement with respect to another software program, Facilities Management (consisting of the Fixed Assets and Warehousing modules), by which EDR would market and license the program to its customers and would pay Integrated ninety (90) percent of the amount received from such licenses while keeping the remaining ten (10) percent. (*Id.* at 25).

CrossPointe, Inc. was formed by Joan Keebler and Susan Johnson in November, 2000, as equal owners. (*Id.* at 24, 26). On September 30, 2002, through an Asset Purchase Agreement (APA) and by a unanimous vote of EDR's shareholders (including David Scott), CrossPointe, Inc., acquired assets of EDR, including specified TERMS software programs and software license and maintenance agreements with a number of school districts. (*Id.* at 24, 27). The APA specifically excluded Facilities Management from the transfer of assets. (Doc. No. 285, Ex. 4, p. 7). In 2003, CrossPointe, Inc. obtained copyright registrations for the TERMS modules

Application Environment 3.1, Student Information 3.1, Human Resource Management 3.1, Human Resource Management 1.6, and Finance 3.1. (Doc. No. 431, p. 27).

In addition to serving as Integrated's sole officer and director, David Scott served as Vice President of SmartWeb Technology, Inc., formed in 1999 by Michelle Farahbaksh who was that company's President and sole director. (*Id.* at 26). From March 1, 2003, through June, 30, 2003, Bill Merryman served as Chief Executive Officer of SmartWeb and was employed part-time from July 1, 2003, through August 31, 2003. (*Id.* at 27). SmartWeb marketed a number of software products to schools including a program called GradeBook.

In late 2003, a Florida state court appointed a receiver to manage CrossPointe, Inc. and ordered that the assets of that company be sold to a designee of either of the two equal owners, Joan Keebler or Susan Johnson. (*Id.* at 26). On November 17, 2003, CrossPointe, LLC, formed in August 2003 by Joan Keebler's husband, John Keebler, purchased the assets of CrossPointe, Inc. and became the successor in interest to that company. (*Id.* at 25, 26). After the purchase of assets from EDR in September, 2002, CrossPointe, Inc. and then CrossPointe, LLC continued to market the TERMS software to the educational market. (*Id.* at 24, 26). Joan Keebler was the President and Chief Executive Officer of CrossPointe, LLC. (*Id.* at 26).

CrossPointe[2] alleged in its nine count Second Amended Complaint that Defendants Integrated, Scott, SmartWeb, Farahbaksh, and Merryman had, *inter alia*, infringed its copyright in Application Environment 3.1 by copying and developing unauthorized derivative works, engaged in unfair competition, induced school districts to violate their TERMS license

---

[2] From this point forward, the Court will refer to both CrossPointe, Inc. and CrossPointe, LLC as "CrossPointe" unless otherwise noted.

agreements by offering to provide maintenance and modified copies of the programs, and committed tortious interference with contractual relationships and advantageous business relationships. (Doc. No. 188, filed Jan. 26, 2004). In their seventeen count Second Amended Counterclaim, Defendants sought declaratory judgment that Application Environment 3.1 was a joint work, that Application Environment 3.1 infringed Facilities Management 2.1, that CrossPointe did not acquire ownership of Application Environment 3.1 through the APA, and that CrossPointe committed fraud on the Copyright Office in its application to register copyrights to Application Environment 3.1. (Doc. No. 156, filed Dec. 30, 2003). The counterclaim further alleged that CrossPointe, Inc., CrossPointe, LLC, Joan Keebler, and John Keebler had infringed, *inter alia*, Integrated's copyrights in Facilities Management 2.1 and 3.1 and two other programs, AutoHost and Work Order, by copying, selling and developing derivative works, and had committed tortious interference with contractual relationships, breach of contract, breach of license, trade disparagement, and libel. (*Id.*).

Prior to trial, the Court granted summary judgment in favor of Defendants on Counts III and IV of the Second Amended Complaint (and, effectively, Count XIII of the Second Amended Counterclaim) when it ruled that 17 U.S.C. § 117 permitted school districts to hire whomever they chose to make modifications to the school districts' own copies of TERMS. (Doc. No. 457, filed Sept. 30, 2004). Upon motion for reconsideration and clarification, the Court clarified that § 117 provided protection only to the extent that modifications or maintenance were performed on the TERMS copies in the possession of the school districts and that protection was not afforded for the distribution of new copies of the programs to the school districts. (Doc. No.

467, filed Oct. 8, 2004).  The Court denied all other summary judgment relief sought by the parties.  (Doc. No. 457).

During the course of a seventeen-day trial, the Court granted Defendants' motion for directed verdict as to CrossPointe's claim that GradeBook infringed TERMS and granted John Keebler's motion to dismiss all claims against him.  Having previously valued the damages on its copyright claims at almost $1.5 million[3] and its tortious interference claims at $93,800, CrossPointe requested damages of $3,000 on its copyright claims during its closing argument.[4] (Doc. No. 522, filed Feb. 3, 2005, Ex. 29, Nov. 8, 2004, Trial Transcript, pp. 149–50).  In their closing argument, Defendants requested a minimum of $5.8 million in compensatory plus punitive damages.  (*Id.* at 212–16).  After receiving for deliberation twenty-two of the twenty-six total counts alleged in the Second Amended Complaint and the Second Amended Counterclaim, the jury found in pertinent part (Doc. No. 501, filed Nov. 9, 2004):

- Integrated was not a joint author of Application Environment 3.1 (Interrogatory 1a), and CrossPointe did not defraud the Copyright Office in its filing of the Application Environment 3.1 copyright registration application (1b).

- David Scott and Integrated infringed CrossPointe's copyright in Application Environment 3.1 by unauthorized copying and that such infringement was willful (2a, 2c).  No damages were awarded (2b).

- Scott, Integrated, SmartWeb and Farahbaksh were liable for infringement on Application Environment 3.1 through the unauthorized derivative works Work Order and Preventive Maintenance (3a).  Scott, Integrated and SmartWeb were found to have willfully

---

[3] In the parties' Joint Final Pretrial Statement, CrossPointe valuated the lost profits on its copyright claims at $249,507.50 against Integrated and $1,202,100.00 against SmartWeb.  (Doc. No. 431, p. 16).  The lion's share of the estimated damages against SmartWeb consisted of license and maintenance revenue related to GradeBook.  (*Id.* at 18–19).

[4] In its closing argument to the jury, CrossPointe expressly requested damages of $3,000 for infringement by Work Order.  It did not ask the jury for a specific dollar amount on its other copyright claims or its tortious interference claims during closing argument.

>   infringed (3c).  Damages were awarded in the amount of $3,000 for the infringement by Work Order against Integrated only (3b).

- Defendants made an unauthorized offer to copy source code and distribute TERMS programs (4).

- Defendants engaged in unfair competition under federal law (5a) and deceptive and unfair trade practices (8).  Defendants tortiously interfered with CrossPointe's contractual or business relationships (7a), for which damages were awarded only against Integrated in the amount of $3,000 (7b).

- CrossPointe did not infringe Facilities Management 2.1 (9a), Facilities Management 3.1 (12a), Work Order (13a) or AutoHost (14a).

- CrossPointe did not commit fraud against the Copyright Office in its application for registration of Student 3.1 (11).  Integrated was not a joint author of Student 3.1 (10).

- CrossPointe breached its contract with Integrated with regard to the sale and maintenance of Facilities Management (19a).  Damages were awarded against CrossPointe in the amount of $50,000 (19b).

Thereafter, the Court entered Final Judgment which reflected the jury's findings and the Court's previous rulings on summary judgment and directed verdict.  (Doc. No. 517, filed Jan. 24, 2005).  Pursuant to § 502(a) of the Copyright Act as well as the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the Court further granted injunctive relief in favor of CrossPointe and against Defendants due to "a probability of continuing or additional infringement,"[5] enjoining Defendants from copying or distributing such programs, from designing, marketing or selling unauthorized derivative works of such programs, and from offering to copy TERMS source code other than for the purpose of maintaining or modifying a school district-owned copy of the program.  (*Id.* at 26).

The Court now considers the parties' respective motions for attorney's fees and costs.

---

[5] This Order was entered in part due to the acrimony and level of hostility demonstrated between the opposing parties and their respective counsel during the trial.

**Discussion**

*CrossPointe's Request for Costs and Attorney's Fees under FDUTPA*

CrossPointe's request for an award of attorney's fees relating to the successful prosecution of its FDUTPA claim is premature. (Doc. No. 519, p. 15). As Defendants correctly point out, Florida Statute § 501.2105 provides that "the prevailing party, after judgment in the trial court and *exhaustion of all appeals*, if any, may receive his or her reasonable attorney's fees and costs from the non-prevailing party." (emphasis added); *see also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 117 (11th Cir. 1994) (statute "expressly includes the culmination of the appellate process in its definition of a prevailing party"). Three separate Notices of Appeal to the Eleventh Circuit have been filed in this case. (Doc. No. 548, filed June 17, 2005; Doc. No. 551, filed June 30, 2005; Doc. No. 552, filed July 1, 2005). Accordingly, the Court will deny CrossPointe's motion for attorney's fees pursuant to FDUTPA without prejudice to its right to renew the request at such time as all appeals of the judgment in this case have been exhausted.

*Parties' Requests for Attorney's Fees under § 505 of the Copyright Act*

Section 505 of the Copyright Act provides,

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The Supreme Court has stated that for purposes of § 505 "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (declining to adopt British Rule by which fees would be awarded as a

matter of course to prevailing parties). In exercising this discretion, the Court must be "faithful to the purposes of the Copyright Act," and it may consider several non-exclusive factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).

Since the *Fogerty* Court reaffirmed the discretion permitted by § 505, several courts have exercised that discretion to deny attorney's fees to prevailing parties in copyright actions. *See, e.g.*, *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 382–83 (5th Cir. 2004) (affirming district court's denial of fees to prevailing defendant where claims were not "frivolous, objectively unreasonable, or without proper motive" and an award would not deter future meritless lawsuits); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74–75 (1st Cir. 1998) (in a case of first impression, denial of fees was within court's discretion where "both parties had important economic interests in the litigation," deterrence was not a factor, and plaintiff's unsuccessful claim was reasonable); *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 754 (11th Cir. 1997) (affirming denial of defendant's motion for fees in light of *Fogerty* factors without analysis); *Clark v. Hudson Bay Music, Inc.*, 1996 WL 547186, *2 (2d Cir. 1996) (unpublished) (denial of plaintiff's request for fees affirmed where damages and future royalties made considerations of deterrence and compensation irrelevant); *Johnson v. Tuff-N-Rumble Mgmt., Inc.*, 2000 WL 1145748, *11 (E.D. La. 2000) (denying defendant's request for fees where plaintiff's claims were colorable and not objectively unreasonable and where award would not deter future baseless suits); *Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F. Supp.

1409, 1429 (S.D. Tex. 1995) (declining to award fees to prevailing plaintiff where deterrence was served by injunctive relief and defendant's position was not objectively unreasonable); *Bourne Co. v. Walt Disney Co.*, 1994 WL 263482, *2 (S.D.N.Y. 1994) (denying plaintiff's motion for fees where case involved unsettled issues of law and defense raised by unsuccessful defendant was "fair ground for litigation" even if not accepted by jury); *see also Donald Frederick Evans & Assoc. v. Continental Homes, Inc.*, 785 F.2d 897, 916 (11th Cir. 1986) (in pre-*Fogerty* case, affirming denial of prevailing defendant's fee request where plaintiff's claims were colorable).

    *1. CrossPointe's Motion*

Parties on both sides seek attorney's fees for those claims on which they were the prevailing *defendants*. CrossPointe moves the Court for an award of attorney's fees it incurred in successfully defending Defendants' copyright-based counterclaims on which the jury found no liability.[6] (Doc. No. 519, pp. 15–17). Although not relied on by CrossPointe, the Court first distinguishes a recent opinion by the Seventh Circuit in which that Court "refined" the *Fogerty* standard and stated that "[w]hen the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Assessment Tech. of Wisc., LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). In that case, the Court focused on the factor of compensation for the prevailing defendant who incurred fees in defending the plaintiff's claims and had no hope of recovering damages from which to

---

[6] The Copyright Act prohibits the award of § 505 attorney's fees for infringement which began before the effective date of the registration of the infringed work. 17 U.S.C. § 412. Therefore, CrossPointe does not seek fees for the prosecution of its own copyright claims on which it prevailed against Defendants.

pay its attorney's fees. *Id.* That Court held that the plaintiff's suit to protect real estate tax data was "marginal" if not frivolous and bordered on copyright misuse as it attempted to "annex a portion of the intellectual public domain." *Id.*

In contrast, the counterclaims for which CrossPointe seeks attorney's fees were brought by Defendants as alternative theories of joint authorship and joint ownership rights to the software programs at issue in CrossPointe's own claims, grew from those theories of joint authorship or ownership, and alleged the invalidity of CrossPointe's copyright registration. As such, the jury chose to adopt CrossPointe's theory over that of Defendants with respect to the ownership of copyrights in the subject programs and subsequent infringing activities and found Defendants liable on CrossPointe's claims. Thus the concern of the Seventh Circuit that a successful defendant has no hope of compensation in the absence of a fee award is not applicable where there are closely related and intertwining claims and counterclaims at issue.[7]

Moreover, Defendants' counterclaims were not objectively unreasonable, despite CrossPointe's attempt to characterize them as constituting a "type of massive retaliation strategy" which would be deterred in the future by an award of attorney's fees in this case. (Doc. No. 519, p. 17). The Court notes that at trial, Defendants presented sufficient evidence to submit all but two of their remaining copyright-based counterclaims to the jury.[8] The Court is

---

[7] The *Wiredata* Court also stated that with respect to prevailing plaintiffs as well as prevailing defendants, "the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees." *Id.* (quoting *Gonzales v. Transfer Tech., Inc.*, 301 F.3d 608, 610 (7th Cir. 2002)). In the instant case, the Court need not examine whether such presumption has been adopted in the Eleventh Circuit because CrossPointe may not recover fees for prevailing on its own affirmative claims of infringement. *See supra* note 3.

[8] The Court had previously ruled in Defendant's favor as to Count XIII of the Second
(continued...)

unpersuaded by CrossPointe's argument that a fee award in this case would have a deterrent effect in other, similar lawsuits.  This lawsuit had as much to do with the personalities and prior relationships of the individual parties involved, the competitive posture of their companies, and the resulting animosity among them as it had to do with claims of copyright ownership and infringement.  Of course, many copyright actions involve business competitors who risk being put to a competitive disadvantage relative to others depending on the outcome of their case, and attorney's fees are frequently granted in those cases.  The Court means only to state that in addition to the colorability of Defendants' copyright counterclaims, the long history of close working relationships among some of the parties or their predecessors giving way to knock-down drag-out litigation, while not unheard of, presents a unique set of facts and circumstances which would make any deterrent effect on future claimants or counterclaimants negligible.[9]

In light of these factors, the Court does not believe that the goals of the Copyright Act would be served by awarding CrossPointe attorney's fees under § 505, nor does it believe that such goals would be defeated by a denial of those fees.  Accordingly, the Court will deny CrossPointe's motion for attorney's fees pursuant to 17 U.S.C. § 505.

*2. Defendants' Motion*

---

[8](...continued) Amended Counterclaim (declaratory judgment as to right of school districts to hire anyone to maintain their copies of TERMS). (Doc. No. 457). Defendants did not submit Count XV (breach of license to maintain TERMS) or Count XVII (infringement of Preventive Maintenance) to the jury.

[9] The Court's reference to the rancor among the parties should not be construed to imply that Defendants' motivation in alleging its counterclaims was improper.  As discussed *supra*, the Court finds that those claims were legitimately asserted to comprise an alternate theory for consideration by the jury.

The Court next turns to Defendants' motion for attorney's fees. Defendants request attorney's fees for their defense of CrossPointe's claims relating to the maintenance of school districts' copies of TERMS pursuant to 17 U.S.C. § 117, on which the Court granted summary judgment in favor of Defendants, and its claim that SmartWeb's GradeBook infringed on Application Environment, on which claim the Court entered a directed verdict at trial. (Doc. No. 531). Defendants argue that the question of whom customer school districts could hire to maintain their copies of TERMS was the central issue in the instant litigation and that CrossPointe's allegations concerning GradeBook were the "most vigorously contested issue in the latter part of the litigation." (*Id.* at 6). Having prevailed on what they characterize as the most significant issues presented in this case, Defendants contend that attorney's fees would be appropriate.

Without deciding on the weight or importance each of these claims may have had relative to all other claims asserted in this lawsuit, however, the Court notes that Defendants' success at the summary judgment stage as to the provisions of § 117 was limited only to those copies of TERMS already in the possession of the school districts. This victory notwithstanding, the jury considered evidence and found that Defendants improperly offered to provide updated copies of TERMS to the districts, an activity which the Court held was not protected by § 117. (Doc. No. 467). In addition, as CrossPointe correctly points out, the jury found Defendants liable for infringement of Application Environment 3.1 as to their programs Preventive Maintenance and Work Order. The jury further found that such infringement by Integrated and David Scott was willful and intentional.

Considering a motion for § 505 attorney's fees in an analogous situation, where defendants prevailed as to the claims of two out of three copyright claimants, another District Court denied the defendants' request for fees because they had been found liable for copyright infringement as to the third plaintiff.  *Fred Riley Bldg. Corp. v. Cosgrove*, 883 F.Supp. 1487, 1491 (D. Kan. 1995).  The Court stated that an award of attorney's fees to infringing parties would undermine one of the primary goals of the Copyright Act, that of discouraging infringement.  *Id.*

This Court finds such reasoning persuasive.  That Defendants in the instant case prevailed in limited fashion on some of CrossPointe's claims does not override the fact that they were found to be copyright infringers (some of them willful infringers), and the purposes of the Act would not be served by an award of attorney's fees.  Accordingly, Defendants' motion for fees will be denied.

*CrossPointe's Request for Costs*[10]

CrossPointe moves the Court for an award of costs pursuant to Federal Rule of Civil Procedure 54.[11]  (Doc. No. 519, pp. 7–15).  That rule provides,

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs....

---

[10]  Although Defendants' motion is styled as a "Motion for Attorney's Fees and Costs," the incorporated memorandum of law does not address the issue of costs, nor have Defendants submitted a bill of costs or supporting documentation as required by Federal Rule of Civil Procedure 54(d)(1).

[11]  CrossPointe filed a separate Bill of Costs in the amount of $41,542.51 (Doc. No. 518, filed Feb. 2, 2005), which costs were subsequently taxed by the Clerk of Court.  (Doc. No. 534, filed Feb. 8, 2005).

Fed. R. Civ. P. 54(d)(1). The Eleventh Circuit has stated that "the prevailing party is the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit." *Montgomery v. Noga*, 168 F.3d 1282, 1304 (11th Cir. 1999) (internal quotation marks omitted) (plaintiff was prevailing party where it obtained injunctive relief and $80,000 in damages on claims under Copyright Act and Lanham Act).

CrossPointe argues that this lawsuit "was about who owned ownership and distribution rights in TERMS, and whether CrossPointe damaged Integrated and SmartWeb through their claims of exclusive ownership and distribution rights." (Doc. No. 519, p. 9). Therefore, CrossPointe contends that it is the prevailing party in this case, having achieved its goals in initiating the litigation by establishing its exclusive copyrights to the TERMS programs, obtaining injunctive relief against Defendants, and successfully defending almost all of Defendants' counterclaims. (Doc. No. 519, pp. 8–9).

On the other hand, Defendants oppose any award of costs to CrossPointe on the ground that it is *not* the prevailing party. (Doc. No. 533, pp. 2–8). First, Defendants argue that CrossPointe did not prevail because it did not obtain the net judgment in the case, having received an award of damages from the jury totaling $6,000 in contrast to Integrated's award of $50,000 on its breach of contract claim.[12] (*Id.* at 3). Defendants next argue that they, not

---

[12] This fact is not lost on the Court; however, it must be noted that Defendants overlook the injunctive relief afforded to CrossPointe in their calculation, and the cases on which Defendants rely are inapplicable to the instant case because their holdings that the net judgment is an important factor in determining prevailing party status are based on the application of Florida law. *See, e.g.*, *Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co.*, 207 F.3d 1247, 1252 (11th Cir. 2000) (applying Florida's net judgment rule in order to award fees to prevailing defendant under contractual attorney's fee provision); *Prosperi v. Code, Inc.*, 626 So. 2d 1360, 1363 (Fla. 1993) (net judgment important factor in statutory mechanic's lien case).

CrossPointe, prevailed on the most significant issues in the litigation, asserting that "[t]here was no issue more central to this litigation than the right to perform maintenance on copies of TERMS software owned by the school districts." (Doc. No. 533, p. 5). They further contend that CrossPointe's recovery on its claims was *de minimus*,[13] thereby precluding a finding that it was the prevailing party, citing *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633 (7th Cir. 1990); *Bats Inc. v. Vector Pipeline LP*, 222 F.R.D. 356 (N.D. Ind. 2004). (Doc. No. 533, pp. 7–8).

The Court will address the question of costs without making a determination as to which side prevailed in this litigation. Assuming *arguendo* that CrossPointe is the prevailing party for purposes of an award of costs, the Court will exercise its discretion under Rule 54(d)(1) to deny such request. "Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party" by its inclusion of the language "unless the court otherwise directs."[14] *Crawford Fitting Co. v. J.T. Gibbons, Inc. Champion Int'l Corp.*, 482 U.S. 437, 442 (1987). Such discretion is not unfettered, and the Court must give a reason for its denial of costs.

---

[13] Again, however, Defendants do not consider CrossPointe's injunctive relief.

[14] The Court further notes that Rule 54(d) begins with the language, "[e]xcept when express provision therefor is made...in a statute of the United States...." Section 505 of the Copyright Act provides that "the court *in its discretion may* allow the recovery of full costs by or against *any party*...." 17 U.S.C. § 505 (emphasis added). This sentence is distinguishable from the following sentence, which expressly provides that "the court may also award a reasonable attorney's fee to the *prevailing party* as part of the costs." *Id.* (emphasis added). One court expressly held that the § 505 cost provision overrides Rule 54(d) in copyright actions and that "no presumptions in favor of the prevailing party are created." *Sanford v. CBS Inc.*, 108 F.R.D. 42, 43 (N.D. Ill. 1985). Another court stated in dicta that the first sentence could permit the award of costs to the *losing* party rather than the prevailing party under appropriate circumstances. *Whelan Assoc., Inc. v. Jaslow Dental Lab., Inc.*, 609 F. Supp. 1325, 1329 (E.D. Pa. 1985).

*Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) (reversing denial of costs where district court offered no explanation for its decision).

The Court believes that the instant lawsuit is one of those unusual cases in which a denial of costs is appropriate. First and foremost, despite its success in procuring a permanent injunction against Defendants and its lowering its request of damages to only $3,000 on its copyright infringement claims during its closing argument (which it received along with $3,000 for tortious interference), only six weeks earlier CrossPointe had valued its copyright claims at nearly $1.5 million and its tortious interference claims at $93,800. Although CrossPointe was not the only party to grossly overestimate the value of its claims, as Defendants requested $5.8 million from the jury and received an award of $50,000, the overvaluation of potential damages by both sides played a large part in the expense of the litigation and the vehemence with which all parties conducted their discovery and motions practice in this case. Despite the Court's belief that the claims and counterclaims themselves were reasonable and supportable, the acrimony among the parties and their lawyers plagued the litigation from the start and at times reached levels of unprofessionalism. The Court acknowledges that a denial of costs under Rule 54(d)(1) is out of the ordinary; however, in light of the particular contentiousness in this case and the misjudgment of the value of the case, the Court will deny CrossPointe's motion for costs.

**Conclusion**

Based on the foregoing, the Court rules as follows:

1.  CrossPointe's Motion for Costs and Attorney's Fees pursuant to Florida Statute § 501.2105 (Doc. No. 519) is **DENIED** without prejudice to its right to renew the request at such time as all appeals of the judgment in this case have been

exhausted. CrossPointe's Motion for Costs and Attorney's Fees pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d) are **DENIED** with prejudice. The Bill of Costs entered by the Clerk of Court (Doc. No. 534) is **VACATED**.

2. Defendants' Motion for Attorney's fees and Costs (Doc. No. 531) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _18th__ day of July, 2005.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record